FILED

APR - 3 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 08-15936-B-7 |
| Ronald Earl Applegate and Wijtske Applegate, | DC No. UST-2 |
| Debtors. | |

**MEMORANDUM DECISION REGARDING UNITED STATES
TRUSTEE'S MOTION TO DISMISS CASE**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Mark L. Pope, Esq., Assistant U.S. Trustee, appeared on behalf of Sara L. Kistler, Esq., Acting U.S. Trustee.

Louis J. Esbin, Esq., appeared on behalf of the debtors, Ronald Earl Applegate and Wijtske Applegate.

The United States Trustee ("UST") disputes certain deductions claimed by the debtors, Ronald Earl and Wijtske Applegate (the "Debtors") on Form 22A (the "Means Test"). Based thereon, the UST moves to dismiss this case as a presumed abuse of chapter 7 pursuant to 11 U.S.C. § 707(b)(3).[1] In the alternative, the UST contends that

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat.

the Debtors have the ability to repay a substantial portion of their debts through a chapter 13 plan. The UST asks that the case be dismissed as an abuse of chapter 7 based on the totality of the circumstances of the Debtors' financial situation pursuant to § 707(b)(3) (the "Motion"). In response, the Debtors contend, *inter alia*, that their additional expense deductions, including estimated income taxes and student loan payments, constitute "special circumstances" within the meaning of § 707(b)(2)(B). For the reasons set forth below, the UST's Motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 707, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

The Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on September 22, 2008. Mr. Applegate is self-employed as a free lance musician. Mrs. Applegate is a registered nurse at Antelope Valley Medical Center. They have a 28-year-old daughter listed as a dependent. The Debtors' schedules show that they have a secured mortgage debt in the amount of $303,578.62, and unsecured nonpriority debts totaling $171,504.89.[2]

After the initial meeting of the creditors, the Debtors filed amended schedules B, C, I, and J, and an amended Means Test. Pursuant to their Means Test, the Debtors report a current monthly income, averaged over the six months prior to bankruptcy, of $7,856.20

---

23 (hereafter "BAPCPA").

[2]The Debtors filed schedule E erroneously showing a "priority" student loan debt in the amount of $15,219.94. However, student loan obligations are not entitled to "priority" status under § 507(a). Student loans are recognized as general unsecured claims and the court has therefore included this debt with the general unsecured claims shown on schedule F.

2

("CMI"). This amount, annualized over 12 months, is $94,274.40. The applicable median family income for the Debtors is $76,931.

The Debtors listed their expenses for food, clothing, health care, nonmortgage housing and utilities expenses, and for transportation expenses. In the "Other Necessary Expenses" category, Debtors listed taxes, involuntary employment deductions, life insurance, health and disability insurance costs, additional food and clothing expenses, charitable contributions, and the mortgage payment on the family residence. On line 25, the Debtors claimed a deduction for federal, state and local income taxes in the amount of $1,929.69 per month (the "Income Tax Deduction"). On line 44, Debtors listed payments on "prepetition priority claims" of $253.67 per month representing payments on a student loan obligation (the "Student Loan Payment"). Altogether, the Debtors claimed deductions totaling $7,922.50 from their CMI of $7,856.20, leaving a 60-month disposable income (line 51: "DI") of $0. Based thereon, the Debtors stated in their Means Test that the "presumption of abuse" under § 707(b)(2) did not arise.

The chapter 7 Trustee concluded the § 341 meeting on November 25, 2008, and filed a report of no asset case. On December 5, 2008, the UST served a statement of presumed abuse under § 704(b)(1)(A). On January 5, 2009, the UST filed this Motion and set the matter for hearing on February 5, 2008.[3] The Debtors filed an opposition. The court heard oral argument and took the matter under submission. The court extended the submission date at the Debtors' request for an opportunity to file a supplemental brief with supporting evidence. The supplemental brief was due by the first week of March. No supplemental opposition or documentation has been filed.

---

[3] In response to this Motion, the Debtors contend that the Motion is time barred. However, the § 341 meeting of creditors was not concluded until November 25, 2008. The § 704(b)(1) statement of presumed abuse was filed December 5, 2008. On December 24, 2008, the UST timely filed a motion for an extension of time to file this Motion under § 707(b). That motion for an extension of time was not opposed and the court granted the extension of time at the initial hearing on this matter. This Motion was therefore timely filed. The court overruled that objection at the hearing.

3

The UST argues, *inter alia*, that the Debtors' Amended Means Test has six errors which collectively result in a gross understatement of DI. Two of the errors resulted in a nominal benefit for the Debtors. The Debtors take exception with two of the deductions contested by the UST stated as follows:

    1.    Line 25; the deduction for income taxes should be decreased from $1,930 to $934 based on a 12% tax rate and the Debtors' income tax returns; and

    2.    Line 44; the claim for Student Loan Payments in the amount of $254 on priority claims is erroneous because it is based on a $15,220 scheduled student loan obligation which does not meet the requirements for a priority claim.

Altogether, the UST calculates the Debtors' allowable deductions under § 707(b)(2) to be $6,603. This amount, deducted from the Debtors' stated CMI of $7,856.20, would leave a DI of $1,253.20. Over a period of 60 months, the Debtors' DI would be $75,192.

**Issue Presented.**

A chapter 7 case is presumptively abusive if the Debtors have enough DI to pay at least $10,950 to their unsecured creditors over a period of 60 months. On a monthly basis, this calculates to a payment of $ 182.50. It is undisputed that the Debtors will have enough DI to make this case presumptively abusive if the Income Tax Deduction is reduced to reflect the Debtors' actual tax liability and the Student Loan Payment is disallowed as a "priority" deduction on the Means Test. The Debtors contend that the higher Income Tax Deduction is justified because they lost a real property to foreclosure in 2008 and will not have the benefit of that mortgage interest deduction. They, in essence, argue that the projected additional income tax liability is a "special circumstance," which should be included for the purpose of calculating DI. The Debtors also contend that their obligation to repay the student loan constitutes a "special circumstance" for the purposes of calculating DI. The Debtors have the burden of proof to prove such "special circumstances." Therefore, the dispositive issue is whether the Debtors have sustained their burden of proof in showing the existence of "special circumstances" in connection with their Income Tax Deduction and the Student Loan

Payment.

**Analysis.**

To understand the issue here, it is necessary to journey through the statutory maze that was created with the passage of BAPCPA. The term "disposable income" is a calculation that begins with the Debtor's CMI defined in § 101(10A). The Debtors' income, from all sources, must be listed on the Means Test. The Means Test determines, *inter alia*, which statutes govern the calculation of DI. Here, the Means Test shows that the Debtors' CMI exceeds the State of California's median income making the Debtors "above median income" debtors.

From the CMI, the Debtors may deduct living expenses based on the National and Local Standards issued by the Internal Revenue Service ("IRS Standards"). § 707(b)(2)(A)(ii)(I). The Debtors may also deduct, *inter alia*, "actual monthly expenses" for the categories identified by the IRS as "other necessary expenses." These expenses include the average monthly liability for federal, state and local taxes actually incurred (not including real estate and sales taxes). *Id.* Pertinent to this Motion, the Debtors may also deduct as an "expense" the average monthly payments they make for "priority claims" which include child support and alimony.

If the IRS Standards are not adequate to meet a debtor's particular circumstances, then § 707(b)(2)(B) allows the debtor to justify additional expenses based on a showing of "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B)(I). The debtor has the burden of proof to establish those "special circumstances" through an analysis involving a four-part inquiry. For each additional expense claimed, the debtor is required to (1) show that there is no reasonable alternative for the additional expense (§ 707(b)(2)(B)(I)), (2) itemize the additional expense, (3) provide documentation for the expense, and (4) provide a detailed explanation of the "special circumstances" that make the expense necessary and reasonable. § 707(b)(2)(B)(ii).

At the hearing on this matter, the Debtors requested and were given an opportunity

to submit supplemental briefing and evidence to support their "special circumstance" claims. However, the Debtors have failed to produce any documentation relating to their anticipated income tax liability, or the student loan obligation. Although the "special circumstances" inquiry has four parts, in the absence of any documentation to support each claimed "special" expense, the court does not need to consider the remaining three "special circumstance" factors. Further, in the absence of appropriate documentation, the court does not need to consider whether the Income Tax Deduction or the Student Loan Payment can constitute "special circumstances." Without adequate supporting documentation, the Debtors' efforts to explain the excess expense is meaningless in light of the plain language of § 707(b)(2)(B)(ii).

This issue with regard to the Student Loan Payment was addressed recently in the case, *In re Fonash*, ___ B.R. ____, 2008 WL 5248175 (Bankr. M.D.Pa. 2008). The *Fonash* court explained that regardless of whether student loan expenses might be the type of "special circumstance" to rebut the Means Test presumption of abuse, "a debtor seeking to prove 'special circumstances' to avoid a § 707(b) dismissal must file or introduce into the record verified documentation, independent of his schedules and Form 22A, to prove the *bona fide* existence and terms of student loan debt." *Id.* at 5.

> Under § 707(b)(2)(B), a debtor seeking to show special circumstances bears both a procedural and a substantive burden. *In re Patterson*, 392 B.R. 497, 503 (Bankr. S.D.Fla. 2008), *citing In re Haman*, 366 B.R. 307, 312 (Bankr. D.Del. 2007) ("For a debtor to successfully demonstrate a special circumstance, he must fulfill both the procedural and substantive requirements of section 707(b)(2)(B).") To satisfy the procedural requirements of the statute a debtor is required to "itemize each additional expense or adjustment of income and . . . provide . . . (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. § 707(b)(2)(B)(ii). Additionally, a debtor must "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required." 11 U.S.C. § 707(b)(2)(B)(iii).

*Id.* at 4-5.

With the enactment of BAPCPA, the practice of consumer bankruptcy law

changed forever. One of the consequences of BAPCPA is that it imposes a significant "record keeping" burden on those who come to the bankruptcy court for relief. To the extent that pre-BAPCPA debtors may have been able to prepare their bankruptcy schedules based on personal recollection and good faith estimates, that practice no longer works in the post-BAPCPA world. The "record keeping" burden applies to all filers, but it is particularly important for "above median income" debtors. As illustrated above, a chapter 7 debtor who cannot afford to pay to his/her creditors, the DI available according to the IRS Standards must prove "special circumstances" to avoid dismissal of the case. To do that, the debtor must be prepared to itemize, *document*, and justify any exception with a detailed explanation.

Ideally, those records should be compiled at the time the petition is prepared and they must be retained for future use in the administration of the case. Post-BAPCPA bankruptcy practitioners now have an obligation to identify and assure the preservation of supporting documentation from their clients at the outset of a case. This is especially true where it appears that the debtor may need to rely on "special circumstances" pursuant to § 707(b)(2)(B) to overcome the presumption of abuse in chapter 7, or to get a plan confirmed in chapter 13. The debtor and his or her counsel must be prepared to establish those "special circumstances" through credible documentary evidence.

The new "record keeping" requirement under BAPCPA does not affect just the chapter 7 "presumed abuse" test. In all bankruptcy cases, debtors have a duty under § 521(a)(1) to file a complete and accurate list of their creditors and to candidly disclose their assets, liabilities, income and expenses. Under § 521(a)(4), a debtor must surrender books and records and cooperate with the trustee and/or auditor. Section 28 U.S.C. § 586(f) permits the United States Trustee to perform periodic audits of cases to determine whether the income and expenses stated in the schedules are complete and accurate. It would be virtually impossible for an attorney to assist his or her client through that audit without some documentation to establish a basis for those items being audited.
/ / /

Finally, under § 707(b)(4) subparagraphs (C) and (D), debtor's counsel has a duty, equivalent to that under Rule 9011, to perform a reasonable investigation into the circumstances giving rise to the petition. The court in *In re Robertson*, 370 B.R. 804 (Bankr. D.Minn. 2007), though critical of the wording of § 707(b)(4), stated that the legislature made its point explicitly:

> [T]heir general drift is clear: debtors' counsel are to exercise significant care as to the completeness and accuracy of *all* recitations on their clients' schedules, after they have made a factual investigation and legal evaluation that conforms to the standards applicable to any attorney filing a pleading, motion, or other document in a federal court. The content of a debtor's petition and schedules is relied on, and should have the quality to merit that reliance.

*Id.* at 809 n.8 (emphasis in original).

Returning now to the case at hand, the additional amount which the Debtors sought to deduct from their CMI on account of the Income Tax Deduction was $996 per month. The amount which the Debtors sought to deduct on account of the Student Loan Payment was $ 253.67. Over a 60-month period, these funds would result in a $74,980.20 dividend to unsecured creditors. This amount is more than the $10,950 threshold which establishes the presumption of abuse under § 707(b)(2). With this money, the Debtors could pay their scheduled unsecured claims, including the student loan obligation, in full.

**Conclusion.**

The Debtors have not provided any documentation to support a finding of "special circumstances" which would warrant the deduction of living expenses above those allowed in the IRS Standards. The statutes that prescribe the requirements for a showing of "special circumstances," are clear and unambiguous. The above median income debtor who cannot adequately document the "special circumstance" relating to any variation from the income and expenses defined in the Means Test will not be able to obtain a chapter 7 discharge over the objection of an unsecured creditor or the UST.

Based on the foregoing, the court finds and concludes that the Debtors have the ability to pay a substantial portion, if not all of the debts for which they seek a discharge

and that the granting of a discharge in this case would be an abuse of chapter 7. The UST has satisfied her initial burden of proof to establish the presumption of abuse. The Debtors have failed to rebut the presumption by establishing the existence of "special circumstances." Accordingly, the UST's motion to dismiss will be granted unless the Debtors voluntarily convert their case to chapter 13 and file a chapter 13 plan within 10 days from service of this ruling. If the case is not so converted, then the UST shall submit an order dismissing this case.

Dated: April __3__, 2009

W. Richard Lee
United States Bankruptcy Judge